IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KAREN ANN ALVAREZ, | § | |
| Plaintiff, | § § § | |
| V. | § § | CIVIL ACTION NO. 4:16-CV-00432 |
| CAROLYN W. COLVIN, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § § § § § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Magistrate Judge[1] in this social security appeal is Defendant's Cross-Motion for Summary Judgment (Document No. 12) and Memorandum in Support (Document No. 12-1), and Plaintiff's Motion for Summary Judgment and Response to Defendant's Cross-Motion for Summary Judgment (Document No. 15). Having considered the cross motions for summary judgment, Defendant's Response to Plaintiff's Brief in Support (Document No. 16), the administrative record, the written decision of the Administrative Law Judge dated August 11, 2014, and the applicable law, the Magistrate Judge ORDERS, for the reasons set forth below, that Defendant's Cross Motion for Summary Judgment is GRANTED, Plaintiff's Motion for Summary Judgment is DENIED, and the decision of the Commissioner is AFFIRMED.

---

[1] On September 14, 2016, pursuant to the parties' consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 11.

1

## I. Introduction

Plaintiff Karen Ann Alvarez ("Alvarez") brings this action pursuant to § 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits. Alvarez argues in this appeal that: (1) "The ALJ erred in finding Plaintiff's breast cancer was not severe based on a failure to meet the twelve-month durational requirement;" (2) "the ALJ erred in failing to properly evaluate the severity of Plaintiff's impairments;" (3) "the ALJ erred in finding Plaintiff's alleged limitation from her impairments are not credible;" and (4) "the ALJ's Residual Functional Capacity finding is not supported by substantial evidence." The Commissioner, in contrast, argues that (1) there is substantial evidence in the record to support the ALJ's decision, (2) the decision comports with applicable law, and (3) the decision should therefore be affirmed.

## II. Procedural History

On or about January 7, 2013, Alvarez filed an application for disability insurance benefits ("DIB"), claiming that she had been unable to work since January 1, 2011, as a result of back pain, obesity, and status post treatment of breast cancer (Tr. 13). The Social Security Administration denied her application at the initial and reconsideration stages. After that, Alvarez requested a hearing before an ALJ. The Social Security Administration granted her request and the ALJ, William B. Howard, held a hearing on April 2, 2014, at which Alvarez's claims were considered (Tr. 24–57). Thereafter, on August 11, 2014, the ALJ issued his decision finding Alvarez not disabled (Tr. 8–23).

2

Alvarez sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 416.1470. On December 3, 2015, the Appeals Council found no basis for review (Tr. 1–6), and the ALJ's decision thus became final.

Alvarez filed a timely appeal of the ALJ's decision. 42 U.S.C. § 405(g). Both sides have filed a Motion for Summary Judgment, each of which has been fully briefed. The appeal is now ripe for ruling.

### III. Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C. §405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record, nor

try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Jones*, 174 F.3d at 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391, 392–93 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

## IV. Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson*, 864 F.2d at 344. The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony*, 954 F.2d at 293 (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;
2. If the claimant does not have a "severe impairment" or combination of impairments, [he] will not be found disabled;
3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;
4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and
5. If the claimant's impairment prevents [him] from doing any other substantial gainful activity, taking into consideration [his] age, education, past work experience and residual functional capacity, [he] will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *Id.* Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut his finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 564.

Here, the ALJ, in the August 11, 2014, decision (Tr. 8–23), found at step one that Alvarez had not engaged in substantial gainful activity since January 1, 2011, her DIB application date. (Tr. 13). At step two, the ALJ determined that Alvarez had the following severe impairments: "back pain, obesity, and status post treatment of breast cancer." At step three, the ALJ determined that Alvarez did not have an impairment or a combination of impairments that met or equaled a listed impairment. Prior to consideration of steps four and five, the ALJ determined that Alvarez had the "residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), except work should be at a non-forced pace with only occasional bending and stooping, and no crawling. (Tr. 15). Then, at step four, the ALJ found that Alvarez, despite her impairments and limitations, was "capable of performing her past relevant work as an accountant, a payroll clerk, and a receptionist," and that Alvarez was therefore not disabled. (Tr. 17).

In this appeal, Alvarez argues that the ALJ erred: (1) in finding her breast cancer was not severe because it did not meet the twelve-month durational requirement; (2) in his evaluation of the severity of her impairments by specifically finding her breast cancer, her post–breast cancer treatment and surgeries, or her documented mental disorders were not severe; (3) in his consideration of her subjective complaints; and (4) in his Residual Functional Capacity (RFC) assessment. According to Alvarez, the ALJ's error in finding her breast cancer not severe was erroneous because: (1) the ALJ should have considered her status post treatment of breast cancer as part of her history of breast cancer and (2) if the ALJ had considered Plaintiff's status post treatment and history of breast cancer together, he would have properly found her impairment met the twelve-month durational requirement. Alvarez also argues that the ALJ failed to properly evaluate the severity of her impairments when he found that her breast cancer, her post–breast cancer treatment and surgeries, and her documented mental disorders were not severe. Alvarez

contends that these findings are not supported by substantial evidence and are also a result of legal error. Alvarez also argues the ALJ erred in his consideration of her subjective complaints because it was made by reference to a "credibility" determination, which is now improper under SSR 16-3p. Finally, Alvarez argues that (1) the ALJ's RFC finding is not supported by substantial evidence and (2) the vocational expert's testimony is based on an incomplete RFC, so it should be remanded. The Commissioner argues, in response, that any error in the ALJ not finding some of the Alvarez's impairments to be severe is harmless at most because he nevertheless considered all impairments in his findings, that newly issued SSR 16-3p does not retroactively apply to Alvarez's subjective complaints, and that substantial evidence supports the ALJ's RFC assessment.

## V. Discussion

### A. Severity of Plaintiff's Breast Cancer

In Alvarez's first issue, Alvarez contends that the ALJ erred in finding her breast cancer was not severe based on its failure to meet the twelve-month durational requirement. Alvarez contends that as a result of this error, the case should be remanded. However, once an ALJ goes past step two of the evaluation process and makes a decision at step four or five, the severity standard is generally no longer material. *Jones v. Bowen*, 829 F.2d 524, 526 n.1 (5th Cir. 1987). Because the regulations require a claimant to show only one "severe" impairment to proceed past step two of the sequential evaluation process, an ALJ's decision to find a particular impairment "severe" at step two is not a reversible error provided the ALJ finds at least one of the claimant's impairments is "severe." *Cagle v. Colvin*, 2013 WL 2105473, at *5 (S.D. Tex. 2013) (unpublished); 20 C.F.R. § 404.1520(a)(4)(ii). Thus, once it is determined that a claimant has a severe impairment for the purposes of step two, the combined effect of all impairments is

considered, regardless of whether they are the result of "severe" or "non-severe" impairments. The ALJ did so in the instant case, considering all of Alvarez's impairments when proceeding to step four, even though he found Alvarez's breast cancer and subsequent infection to be not severe. (Tr. 13–18).

Even if the ALJ had erred at step two in his severity determination, such an error was harmless. An error is harmless if it does not "affect the substantial rights of a party," *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012), or when it "is inconceivable that the ALJ would have reached a different conclusion" absent the error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003); *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) ("Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error.") Here, the ALJ progressed beyond step two in determining that Alvarez was not disabled, so any step-two error is harmless. *See Gills v. Colvin*, No. 3:11–CV-2962-BH, 2013 WL 1294651 *19 (N.D. Tex. 2013) ("[A]pplication of harmless error analysis is appropriate in cases where the ALJ proceeds past step 2 in the sequential evaluation process").

Alvarez's argument that the ALJ's RFC finding "likely would have been more restrictive" if he had found the breast cancer a severe impairment is only speculation. To establish prejudice, a claimant must show that the ALJ "could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d at 728 (*citing Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)). Thus, to show such prejudice, Alvarez must present more than mere speculation. *See Hyde v. Astrue*, 2009 U.S. App. LEXIS 10228*11 (5th Cir. May 12, 2008) (holding that more than a speculative assertion is necessary to show prejudice from an ALJ's failure to fully develop the record).

Further, the ALJ did consider the effect of Alvarez's breast cancer and subsequent complications in his RFC finding (Tr. 15). Alvarez's first issue in this appeal is rejected.

### B.     Evaluation of the Severity of Plaintiff's Impairments

In her second issue, Alvarez contends that the ALJ erred in failing to properly evaluate the severity of her impairments, including her breast cancer and her documented mental disorders. However, the ALJ still considered all of Alvarez's impairments, both severe and non-severe, when proceeding past step two of the evaluation process. This renders any error harmless as discussed above. Alvarez's second argument is therefore rejected.

### C.     Consideration of Plaintiff's Subjective Complaints

In Alvarez's third issue, she contends that the ALJ erred in his assessment of her subjective symptoms. That assessment, contained in the August 11, 2014, decision, was made in connection with the ALJ's RFC determination, and is as follows:

> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, and limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.
>
> The claimant alleges disability based on the residual effects of her multiple surgeries, including procedures related to her breast cancer, and her back pain. She lives in a house with her husband, and she is alone during the day while he goes to work. The claimant said she could not cook, do laundry, wash dishes, or otherwise perform household chores. She testified to difficulty sitting due to residual pain from breast cancer surgery and subsequent surgical procedures. The claimant

reported she gained weight because she was unable to move around after the surgery. She described neuropathy in both feet, as well as pain in her stomach. The claimant state her Norco takes the edge off her pain, but does not work as well as it used to. She indicated Xanax helped with her anxiety. The claimant alleged side effects of sleepiness, nausea, and stomach discomfort. She admitted she could get along with others and had no problems with authority figures (*see* Hearing Testimony).

In her Function Report of July 2, 2013, the claimant alleged she could not bend at all, could not stand or sit for long periods and needed help getting out of a chair or bed. She reported she spent most of the day in bed and required help with personal care (Ex. 9E).

The claimant has undergone several surgeries related to her breast cancer. In June of 2012, she underwent bilateral breast reconstruction after a bilateral mastectomy (Ex. 19F/31). The next month, she suffered from mastectomy flap necrosis and required an additional surgery (Ex. 19F/26). On December 20, 2012, she underwent a revision of the bilateral breasts (Ex. 19F/34). The claimant testified these effects of these surgeries limited her mobility and resulted in additional weight gain. She underwent gastric sleeve surgery on December 11, 2013 (Ex. 25F/14). She was doing well a month later (Ex. 25F/7). Throughout this period, the claimant often complained of ongoing pain in her abdomen and back (*see* Exs. 18F/14 & 20F/11). She received treatment in the form of medication, including narcotic pain medication (Ex. 14E).

The claimant's impairments significantly limit her ability to stand, walk, lift and carry. She cannot perform any work more strenuous than the "sedentary" exertional level. However, the medical evidence of record does not support her extreme allegations of an inability to sit and a need to remain in bed most of the day. Object signs and findings on recent physical examination are not particularly adverse. Dr. Culver examined the claimant on April 17, 2013, and found she had normal range of motion, except for decreased range in her lumbar spine secondary to abdominal pain. He noted the claimant's upper extremities were normal (Ex. 10F). On August 30, 2013, Srinivas Panja, M.D., found the claimant had normal heart sounds, no wheezes, normal muscle tone, normal range of movements, no spine tenderness, normal reflexes, and no evidence of neuropathy (Ex. 24F/7). Jason Balette, M.D., examined the claimant on September 23, 2013, and noted she had normal pulses, normal strength in her upper and lower extremities, and intact sensation (Ex. 23F/8). On March 31, 2014, George Murillo, M.D., indicated the claimant had decreased range of motion, and decreased strength, along with tightness in her lumbar spine (Ex. 22F/4). This objective evidence supports the above residual functional capacity, but is not consistent with the claimant's allegations, particularly those regarding her ability to sit.

The claimant reported some difficulties with concentration (Ex. 9E), though she testified she liked to read novels. She continues to take strong narcotic pain

10

medication (Ex. 14E). This medication reasonably limits her ability to maintain "pace" such that she is limited to work that has a non-forced pace.

The undersigned gives some weight to the opinion of William Culver, M.D., who performed a consultative examination of the claimant on April 17, 2013. Dr. Culver found the claimant should avoid walking or standing for long periods, deep knee bending, squatting and kneeling, as well as no repetitive lumbar bending and lifting greater than five pounds from floor to waist and ten pounds from waist to shoulder level (Ex. 10F) This opinion is consistent with Dr. Culver's examination of the claimant, but recent physical examinations revealed fewer limitations (*see* Ex. 23F/8).

The undersigned [gives] little weight to the opinion of the State agency medical consultant, who found the claimant could perform a range of light work (Ex. 4A). The claimant's recent treatment history supports a finding that she is capable of sedentary work with the additional limitations set forth in the above residual functional capacity.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(Tr. 16–17).

As set forth by the ALJ in his decision, the effect a claimant's subjective symptoms have on the claimant's residual functional capacity requires the application of a two-step process. Pursuant to SSR 96-7p, which was in effect at the time of the ALJ's decision:

> The regulations describe a two-step process for evaluating symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness: First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the individual's pain or other symptoms....Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of

11

the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. This requirement for a finding on the credibility of the individual's statements about symptoms and their effects is reflected in 20 CFR 404.1529(c)(4) and 416.929(c)(4). These provisions of the regulations provide that an individual's capacity for basic work activities to the extent that the individual's alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record.

Alvarez argues at the outset that the ALJ's subjective complaint analysis, which was based on a stated "credibility" assessment, is contrary to SSR 16-3p, which eliminated "the use of the term 'credibility from [the Social Security Administration's] sub-regulatory policy" and clarifies that a claimant's "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029 at *1; *see also Richardson v. Colvin*, No. 4:15-CV-0879-BL, 2017 WL 237637, at *16, n.12 (N.D. Tex. Jan. 17, 2017) ("Effective March 16, 2016, the Social Security Administration eliminated 'use of the term 'credibility' from [its] sub-regulatory policy' and in doing so, clarified 'that subjective symptom evaluation is not an examination of an individual's character.'").

Alvarez is correct that SSR 16-3p, which replaced SSR 96-7p, with an "effective" date of March 16, 2016, no longer uses the word "credibility." But, contrary to Alvarez's arguments, that change has not been determined to apply retroactively in this Circuit. *See Mayberry v. Colvin*, Report and Recommendation, Civil Action No. G-15-330, 2016 WL 7686850 *5 (S.D. Tex. Nov. 28, 2016) (concluding that SSR 16-3p should not be applied retroactively). It is well established that, absent explicit language to the contrary, administrative rules do not ordinarily apply retroactively. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 298 (1988) ("Retroactivity is not favored in the law"). Consistent with the Supreme Court precedent, the Commissioner has

12

announced that all SSRs "are effective upon publication, and the effective date is shown on the first page of each Ruling."[2] For SSR 16-3p, the Commissioner provided March 28, 2016, as the effective date, which is more than a year after the ALJ's decision in this case. *See* 81 Fed. Reg. 15776-01, 2016 WL 1131509.

Further, Alvarez argues that the Seventh Circuit required retroactive application of SSR 16-3p in *Mendenhall v. Colvin*. This is actually an unpublished decision by the U.S. District Court for the Central District of Illinois, which does not bind this Court. Instead, the Sixth and Seventh Circuits have ruled that SSR 16-3p does not require remand, especially when the new ruling does not alter the factors an ALJ is supposed to consider in his determinations. *See Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016); *Dooley v. SSA*, –F. App'x–, 2016 WL 4046777, n.1 at *5 (6th Cir. July 28, 2016).

Moreover, even if the change had retroactive application, the ALJ's mere use of the word credibility would not constitute error *per se*, particularly where, as here, the ALJ used the term "credibility" not to impugn Alvarez's character, but rather as a reference to the inconsistencies between Alvarez's subjective complaints and the objective evidence in the record. As set forth above, the ALJ detailed the evidence in the record that was contrary to Alvarez's subjective complaints in terms of their intensity, persistence, and limited effects, and did not base his subjective complaint determination on a bare and unsupported assessment of Alvarez's truthfulness. Upon this record, it was not error for the ALJ to use the term "credibility" in his decision. *See e.g. Mayberry*, 2016 WL 76868850 at *6 ("despite her contentions to the contrary, the ALJ did not impugn Mayberry's character or state that she was untruthful; instead, the ALJ

---

[2] *See* https://www.ssa.gov/OP_Home/rulings/rulings-pref.html (last viewed June 10, 2017).

simply weighed the evidence in the record to determine whether it supported Mayberry's subjective symptoms."). Alvarez's third issue in this appeal is also rejected.

### D. Residual Functional Capacity Finding

In her fourth issue, Alvarez contends that the ALJ's RFC finding is not supported by substantial evidence. Again, the standard for substantial evidence is "more than a scintilla and less than a preponderance." *Spellman*, 1 F.3d at 357, 360. The RFC determination is the sole responsibility of the ALJ, *see Taylor*, 706 F.3d at 602–03, and the ALJ considers all relevant medical and other evidence in making the determination, *see* 20 C.F.R. § 404.1545(a)(3); SSR 96-5, 1996 WL 374183, at *5. Such a finding does not constitute an improper medical opinion by the ALJ but instead an assessment of Alvarez's capacity to work based on all of the evidence in the case record. The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.,* SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded in part by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that she did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

The ALJ recited Alvarez's allegations and testimony (Tr. 16). The ALJ then cited the medical findings by Alvarez's several treating physicians in making his RFC assessment, as quoted above (Tr. 16–17). Based on that objective medical evidence, the ALJ limited Alvarez to sedentary work, at a non-forced pace, with only occasional bending and stooping, and no crawling (Tr. 15). The ALJ does not have to accord considerable weight to a treating or examining physician's opinion or diagnosis, and Dr. Balette's recitation of Alvarez's "History of Present Illnesses" in

particular. Nor is the ALJ required to incorporate any specific limitations into his RFC assessment only because it appears in a medical opinion. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Rather, the ALJ has the duty to resolve conflicts in evidence, which he did in this case. *See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). Where only part of a doctor's opinion is supported by the record, such as Dr. Culver's opinion, it is appropriate for an ALJ not to afford weight to the unsupported part of the opinion. *See Kirksey v. Shalala*, 21 F.3d 1109, 1994 WL 171704, at *3 (5th Cir. Apr. 28, 1994) (unpublished). Any of the findings of fact by the Commissioner that are supported by the substantial evidence are to be taken as conclusive. *See Ripley v. Chater*, 67 F.3d 552, 554 (5th Cir. 1995). Thus, the ALJ's decision to give less weight to the opinions of treating or examining physicians is entitled to deference. *See Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001). Substantial evidence supports the ALJ's RFC finding. Alvarez's fourth issue in this appeal is also rejected.

## VI. Conclusion and Order

Based on the foregoing and the conclusion that the ALJ did not err in finding Alvarez's breast cancer was not severe, in his evaluation of the severity of the severity of her impairments, in his consideration of her subjective complaints, and in his RFC determination, it is

ORDERED that Defendant's Cross Motion for Summary Judgment is GRANTED, Plaintiff's Motion for Summary Judgment is DENIED, and the decision of the Commissioner is AFFIRMED.

Signed at Houston, Texas, this 26st day of June, 2017.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE